

# IN THE SUPREME COURT OF GUAM

## PORT AUTHORITY OF GUAM,
Plaintiff-Appellee,

**v.**

## GUAM INDUSTRIAL SERVICES, INC.
## dba GUAM SHIPYARD,
Defendant-Appellant.

Supreme Court Case No. CVA25-006
Superior Court Case No. CV0095-25

## OPINION

## Cite as: 2026 Guam 2

Appeal from the Superior Court of Guam
Argued and submitted on August 29, 2025
Hagåtña, Guam

Appearing for Defendant-Appellant:
George Neil P. Valdes, *Esq.*
Law Office of Louie J. Yanza, P.C.
862 S. Marine Corps Dr., Ste. 203
Tamuning, GU 96913

Appearing for Plaintiff-Appellee:
James L. Canto II, *Esq.*
Port Authority of Guam
Aturidat I Puetton Guåhan
1026 Cabras Hwy., Ste. 201
Piti, GU 96915


E-Received
3/20/2026 2:42:23 PM

BEFORE: ROBERT J. TORRES, Chief Justice; F. PHILIP CARBULLIDO, Associate Justice; KATHERINE A. MARAMAN, Associate Justice.[1]

**TORRES, C.J.:**

[1]    This appeal arises from an unlawful detainer action between Plaintiff-Appellee Port Authority of Guam ("PAG" or the "Port") and Defendant-Appellant Guam Industrial Services, Inc., dba Guam Shipyard ("GSY").  The dispute centers on possession of two locations at the Port: Hotel Wharf and the old Dong Yang site ("Dong Yang").  Following a hearing and summary unlawful detainer proceeding, the Superior Court entered judgment awarding possession of both locations to PAG.  GSY now challenges (1) the denial of its motion to dismiss, (2) the court's handling of its alleged rent overpayments, (3) the application of unlawful detainer statutes to a license, and (4) the denial of an opportunity to file an answer after its motion to dismiss was denied.

[2]    The court did not err in denying GSY's motion to dismiss or entering judgment for PAG on its unlawful detainer claim.  Although the Superior Court erred by proceeding directly to trial without allowing GSY to answer PAG's complaint, GSY has not demonstrated prejudice as required under Guam's civil procedure statutory framework.  *See* 7 GCA § 15802 (2005).

[3]    We affirm.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

**A.  Factual Background**

### 1.  PAG leases Hotel Wharf to GSY

[4]    On May 5, 2017, GSY and PAG entered into a written Open Space Lease Agreement (the "Lease") for GSY to occupy PAG property initially covering approximately 20,000 square feet at Hotel Wharf for a 120-day term at a monthly rate of $10,710.  The Lease stated that "[t]he Lessor

---

[1] The signatures in this opinion reflect the titles of the Justices at the time this matter was argued and submitted.

[PAG] or Lessee [GSY] shall have the right to terminate this Lease whether or not Lessee is in default upon thirty (30) days written notice in accordance with 21 G.C.A. §§ 5101 and 21105," and that "[GSY] shall vacate the Property [Hotel Wharf] upon termination of the Lease." Record on Appeal ("RA"), tab 1 (V. Compl., Feb. 12, 2025), Ex. A at 8 (Open Space Lease, May 5, 2017).

[5] The parties executed a written amendment to the Lease (the "Amendment"), changing the term to a month-to-month tenancy beginning on September 2, 2017, and ending no later than December 31, 2017. The Amendment "provided that Lessor [PAG] may terminate this lease upon giving thirty (30) days written notice in accordance with 21 G.C.A. §§ 5101 and 21105." RA, tab 1 (V. Compl.), Ex. B at 1 (Amendment to Lease Agreement, Sep. 2017).

[6] Upon the expiration of the amended Lease term, GSY remained on Hotel Wharf for seven years without a new executed lease agreement or amendment. During that time, GSY paid invoices for an increased monthly rental amount of $11,760 without written protest.

[7] GSY is engaged in a U.S. Navy project to construct two aircraft carrier camels for a floating camel fender system,[2] and due to the camels' sheer size and weight, GSY asserts that the work can be performed only on PAG's premises—specifically at Hotel Wharf. Appellant's Br. at 3 (June 23, 2025).

### 2. PAG gives GSY permission to use Dong Yang

[8] From February 28, 2022, until December 20, 2024, GSY also occupied Dong Yang with PAG's permission "to use as a lay-down area for a crane demolition project contract with the Port." RA, tab 1 at 3 (V. Compl.); Appellee's Br. at 7 (July 22, 2025); Transcript ("Tr.") at 70–72 (Unlawful Detainer Hr'g, Feb. 19, 2025). By letter dated February 28, 2024, PAG approved an

---

[2] According to GSY, a camel fender system functions as a bumper system to protect large ships—such as aircraft carriers—from impact and damage when contacting a dock, wharf, or pier. Appellant's Br. at 3 n.1 (June 23, 2025). GSY asserts that these systems are "critical" for safely berthing large naval vessels, particularly in ports not originally designed for ships of that size. *Id.*

extension of the crane demolition project and memorialized the license agreement, setting the term of GSY's occupancy of Dong Yang to expire on May 31, 2024 ("License Agreement"). *See* RA, Admitted Exs. (Unlawful Detainer Hr'g, Feb. 19, 2024), Def. Ex. 3 at 1–2 (PAG Letter, Feb. 28, 2024). The letter also permitted PAG to terminate the License Agreement at PAG's discretion, "with or without cause, upon thirty days (30) notice." *Id.* at 1–2. According to PAG, the crane demolition project "is not complete, but the period of performance has since expired." Tr. at 73.

### 3. PAG serves GSY with notices to quit

[9] On December 20, 2024, PAG served GSY with a 47-day notice to quit ("Notice to Quit"), terminating GSY's month-to-month tenancy effective February 5, 2025, and directing GSY to vacate Hotel Wharf and all other occupied areas of PAG property, including Dong Yang.

[10] When GSY did not vacate, on February 6, 2025, PAG served a notice to quit and vacate ("Notice to Vacate") demanding immediate surrender of possession under 21 GCA § 21103(a).

### 4. PAG's intent to lease Hotel Wharf to Black Construction

[11] On January 23, 2025, PAG's Board of Directors resolved to imminently lease Hotel Wharf to Black Construction Corporation ("Black Construction") in connection with a $330.6 million U.S. Navy contract to repair the three most critically failed parts of the Glass Breakwater ("Glass Breakwater Repair Project"),[3] which sustained significant damage from Typhoon Mawar and is critical to maintaining Port access.

---

[3] PAG provides context for the Glass Breakwater Repair Project:

Glass Breakwater is an off-shore concrete and stone barrier structure that bounds the northern side of Apra Harbor and serves as vital protection against tides, currents, and storm surges into Apra Harbor; however, the breakwater suffered major damage from Typhoon Mawar, subjecting it to imminent breaching as assessed by the Army Corps of Engineers, and the failure of Glass Breakwater would catastrophically affect the ability of ships to enter and exit both the Jose D. Leon Guerrero Commercial Port and the Naval Base Guam.

Opp'n Mot. Stay at 13 (Apr. 23, 2025).

[12]     Although the record reflects that no lease existed between PAG and Black Construction when this court took the matter under advisement, PAG's Board of Directors declared that the "entirety of Hotel Wharf" is needed for the Glass Breakwater Repair Project.  *See* RA, tab 1 (V. Compl.), Ex. E at 1 (Resolution, Jan. 23, 2025); Opp'n Mot. Stay at 14 (Apr. 23, 2025).  This is reinforced by an email from Black Construction's President to PAG stating that Black Construction "will need to [sic] *the entire wharf area* for our work on the GBW [Glass Breakwater]."  RA, tab 18 (Decl. Valdes, Mar. 20, 2025), Ex. B at 4 (Email from Kaae to Canto, Feb. 21, 2025) (emphasis added).

## B.  Procedural Background

### 1.  PAG's complaint and GSY's motion to dismiss

[13]     When GSY continued to occupy PAG property after the Notice to Vacate, PAG filed a verified complaint for unlawful detainer on February 12, 2025, seeking immediate possession of Hotel Wharf and Dong Yang under 21 GCA § 21103(a) and, in the alternative, damages for unpaid rent.[4]

[14]     GSY moved to dismiss under Guam Rule of Civil Procedure ("GRCP") 12(b)(6), arguing that: (1) alleged overpayment of $1,050 per month extended its tenancy; (2) the complaint did not strictly comply with 21 GCA § 21103(b) because it sought unpaid rent without specifying the amount due; and (3) summary unlawful detainer procedure was improper given factual disputes.

---

[4] PAG's alternative prayer for relief states:

> Further *in the alternative*, in addition to the above, for judgment against Defendant in the *total amount of monies due and owing Plaintiff under the 2017 Lease Agreement, the 2017 Lease Extension, and any holdover tenancy therefrom between the parties*, to include any interest due at law or in equity, or any prorations thereof, in such amounts which may be proven at trial, up to the date of rendition of judgment herein.

RA, tab 1 at 9 (V. Compl., Feb. 12, 2025) (emphasis added).

### 2.  Hearing, trial, and "abandonment" of monetary claim

[15]     At a combined proceeding, the Superior Court first held a hearing on GSY's motion to dismiss, denied the motion from the bench, and then proceeded directly to the unlawful detainer trial on the merits, during which it admitted multiple exhibits and heard testimony from two witnesses—PAG Acting General Manager Dominic Muna and GSY Compliance Manager Selina Ashland.

[16]     Throughout the hearing on the motion to dismiss and the ensuing trial on the merits, PAG repeatedly stated that it was withdrawing and abandoning its alternative claim for monetary damages, proceeding solely on its claim for possession.  *See* Tr. at 11, 21–24, 39, 95, 99 ("[T]he Port is abandoning, withdrawing, and retracting any alternative plea, or otherwise, for back rent as part of its complaint."); RA, tab 16 at 2 (Dec. & Order, Mar. 11, 2025).

[17]     The trial court entered judgment for PAG on its unlawful detainer claim and issued its written decision and order memorializing its denial of the motion to dismiss and its findings supporting the judgment.

[18]     In its decision and order, the Superior Court concluded that PAG's complaint adequately stated an unlawful detainer claim under 21 GCA § 21103(a) by alleging that GSY remained in possession of PAG property without consent after the expiration of its month-to-month tenancy. The court rejected GSY's argument that the complaint was defective under section 21103(b), noting that PAG proceeded solely under section 21103(a) after withdrawing its alternative damages request, leaving only a possession claim that was suitable for summary unlawful detainer proceedings before a magistrate judge.  The court also found that GSY received adequate notice to quit and vacate the premises under section 21103(a) but nevertheless remained in possession after termination of its tenancy, thereby committing unlawful detainer.

[19]     The Superior Court also rejected GSY's argument that alleged prior rent overpayments renewed its month-to-month tenancy under 18 GCA § 51105, thereby precluding unlawful detainer. The court explained that even if excess rent triggered a renewal, section 51105 would extend tenancy for only one additional month after its termination on February 5, 2025—at most through March 5, 2025. The court ultimately ordered GSY to vacate Hotel Wharf by March 23, 2025, and Dong Yang by April 1, 2025.

[20]     The court set March 23, 2025, as the deadline to vacate Hotel Wharf based on representations by PAG's counsel that Black Construction required access by that date for the Glass Breakwater Repair Project. The court set April 1, 2025, as the deadline to vacate Dong Yang, which was not required for the Glass Breakwater Repair Project, to provide GSY additional time to use this site "as a staging area to move property in order to allow for potentially building the camels." *See* Tr. at 108. The court awarded possession to PAG but denied all monetary relief, attorney's fees, and costs "based on [PAG's] removal of those claims" and the terms of the Lease. *See* RA, tab 16 at 4–5 (Dec. & Order).

### 3. Appeal

[21]     GSY filed its timely Notice of Appeal challenging the denial of its motion to dismiss, the use of summary unlawful detainer procedure, the trial court's handling of alleged rent overpayments, the sufficiency of notice, and the alleged termination of its Dong Yang license.

[22]     After the Superior Court denied its *ex parte* motion to stay proceedings, GSY filed an emergency motion in this court to stay the proceedings pending appeal. We denied the motion.

## II. JURISDICTION

[23]     This court has jurisdiction over appeals from final judgments and orders of the Superior Court of Guam. 48 U.S.C.A. § 1424-1(a)(2) (Westlaw through Pub. L. 119-74 (2026)); 7 GCA §§ 3107, 3108(a) (2005).

### III. STANDARD OF REVIEW

**[24]** This appeal presents questions of law subject to *de novo* review, including: (1) the denial of a Rule 12(b)(6) motion to dismiss, *First Hawaiian Bank v. Manley*, 2007 Guam 2 ¶ 6; (2) whether notice in an unlawful detainer action was defective so as to render the complaint insufficient to state a claim, *Archbishop of Guam v. G.F.G. Corp.*, 1997 Guam 12 ¶ 9; and (3) statutory interpretation, *Guerrero v. Santo Thomas*, 2010 Guam 11 ¶ 8. Under 7 GCA § 15802,[5] reversal is warranted only where the record shows that an error was prejudicial to the defendant's substantial rights.

**[25]** If a party fails to raise an issue before the trial court, this court has the discretion to review the issue for plain error.[6] *See E.C. Dev., Ltd. v. Gen. Conf. Corp. of Seventh-Day Adventist*, 2005 Guam 9 ¶ 55 (recognizing authority to review "plain error[s] affecting substantial rights although they were not brought to the attention of the court" in civil cases (quoting 6 GCA § 103(d))); *cf.*

---

[5] Title 7 GCA § 15802 states:

> *The court must, in every stage of an action, disregard any error*, improper ruling, instruction, *or defect, in the pleadings* or proceedings *which, in the opinion of said court, does not affect the substantial rights of the parties*. *No judgment, decision* or decree *shall be reversed* or affected by reason of any error, ruling, instruction, or defect, *unless it shall appear from the record that such error*, ruling, instruction, *or defect was prejudicial*, and also that by reason of such error, ruling, instruction, or defect, the said party complaining or appealing *sustained and suffered substantial injury*, and that *a different result would have been probable if such error*, ruling, instruction, *or defect had not occurred or existed*. There shall be no presumption that error is prejudicial, or that injury was done if error is shown.

7 GCA § 15802 (2005) (emphases added).

[6] Guam's rules of civil procedure are modeled on their federal counterparts. *See Sharrock v. McCoy*, 2016 Guam 7 ¶ 109. Likewise, "Guam's plain error statute is derived from the former Federal Rule of Criminal Procedure." *People v. Quituga*, 2009 Guam 10 ¶ 10. Accordingly, interpretations of the analogous federal rules may be considered persuasive. *See id.*

As Wright and Miller observe, although the Federal Rules of Civil Procedure lack "a formal provision allowing the appellate courts to notice plain error" analogous to that in the Federal Rules of Criminal Procedure, the "principle nonetheless appears well established." 9B Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2472 (3d ed.) (citations omitted). Federal appellate courts have recognized that, "despite the absence of an objection, they may consider an error so fundamental that it may have resulted in a miscarriage of justice." *Id.* & n.19 (collecting cases). The discretion to review for plain error, however, "will be invoked only in fairly extraordinary circumstances." *Id.* The treatise also notes that some appellate courts "will consider issues of pure law despite a failure to object below." *Id.* (citation omitted).

*Ramiro v. White*, 2016 Guam 6 ¶ 17 (reviewing admission of evidence in civil case for plain error where no objection was made); *Lujan v. Quinata*, 2016 Guam 39 ¶ 21 (same). Reversal is warranted under plain error review only when "(1) there was an error; (2) the error is clear or obvious under current law; (3) the error affected substantial rights; and (4) reversal is necessary to prevent a miscarriage of justice or to maintain the integrity of the judicial process." *Lujan*, 2016 Guam 39 ¶ 22 (quoting *People v. Quitugua*, 2009 Guam 10 ¶ 11). "This court views a plain error analysis with deference to the trial court." *Ramiro*, 2016 Guam 6 ¶ 35 (citing *E.C. Dev.*, 2005 Guam 9 ¶ 55). "Only where there is such plain error apparent on the face of the record that failure to review would result in a manifest miscarriage of justice should the appellate court analyze the evidence." *Id.* (quoting *E.C. Dev.*, 2005 Guam 9 ¶ 55). "Moreover, [the appellant] bears the burden of showing that the error that occurred was prejudicial." *E.C. Dev.*, 2005 Guam 9 ¶ 55 (citing *People v. Ueki*, 1999 Guam 4 ¶ 23); *see also* 7 GCA § 15802.

## IV.  ANALYSIS

### A.  The Superior Court Did Not Err by Denying GSY's Motion to Dismiss

[26]     On appeal, GSY argues that the Superior Court erred in its bench ruling and decision and order denying its motion to dismiss. Appellant's Br. at 7–15. GSY maintains that the complaint was "defective" because it sought unpaid rent without stating the specific amount due, which GSY asserts is strictly required under Guam's unlawful detainer statutes and warranted dismissal under GRCP 12(b)(6). *See id.* at 7–10 (citing 21 GCA § 21103(a)–(b) (2005)). GSY further argues that the court compounded this error by permitting PAG to withdraw its damages claim during trial rather than dismissing the action entirely for failure to satisfy statutory pleading requirements. *See id.* at 13–15.

[27]     We review *de novo* a trial court's denial of a motion to dismiss under GRCP 12(b)(6). *See First Hawaiian Bank*, 2007 Guam 2 ¶ 6; *see also Archbishop*, 1997 Guam 12 ¶ 9 (stating that

determining whether a party has failed to state a claim is a question of law subject to *de novo* review). In reviewing such a motion, a court considers only the complaint, its exhibits, documents incorporated by reference, and materials relied upon therein. *Newby v. Gov't of Guam*, 2010 Guam 4 ¶ 14. The court "must accept all the well-pleaded facts as true, 'construe the pleading in the light most favorable to the non-moving party, and resolve all doubts in the non-moving party's favor.'" *Cruz v. Cruz*, 2023 Guam 20 ¶ 10 (quoting *Guam Police Dep't v. Guam Civ. Serv. Comm'n (Charfauros)*, 2020 Guam 12 ¶ 8). "Dismissal for failure to state a claim is appropriate only 'if it appears beyond doubt that the [non-moving party] can prove no set of facts in support of his claim which would entitle him to relief.'" *Id.* (alteration in original) (quoting *Taitano v. Calvo Fin. Corp.*, 2009 Guam 9 ¶ 6).

[28] Whether notice in an unlawful detainer action was defective so as to render the complaint insufficient to state a claim is also a question of law reviewed *de novo*. *See Archbishop*, 1997 Guam 12 ¶ 9. Because unlawful detainer is a summary proceeding, its statutory notice provisions must be strictly complied with. *See id.* ¶ 10. Under Guam's strict compliance standard, "[a] plain reading construction is appropriate where the statute lays out specific requirements and indicates exactly what is necessary for compliance without ambiguous terms." *See Castino v. G.C. Corp.*, 2010 Guam 3 ¶ 29.

[29] The Superior Court denied GSY's motion to dismiss, holding that PAG's complaint adequately stated an unlawful detainer claim under 21 GCA § 21103(a) by alleging that GSY remained in possession of PAG property without PAG's permission after expiration of its month-to-month tenancy. The court rejected GSY's contention that PAG's alternative request for unpaid rent rendered the entire complaint defective for failing to state the amount of rent owed in the notices to quit, as required by 21 GCA § 21103(b). As the court observed, PAG's Notice to Vacate and complaint cite 21 GCA § 21103(a), not subsection (b), and did not require an allegation of

rent default.  Finally, the court determined that PAG's withdrawal of its alternative request for monetary damages left only the claim for possession, allowing the case to properly proceed as a summary unlawful detainer action under section 21103(a) before a magistrate judge.

[30]　The trial court did not err in denying GSY's motion to dismiss.

### 1. Statutory framework and strict compliance requirements for unlawful detainer actions in Guam

[31]　Guam's unlawful detainer statutes set forth multiple circumstances in which a tenant may be found guilty of unlawful detainer.  Under 21 GCA § 21103(a), an "unlawful detainer" occurs when "[a] tenant of real property . . . continues in possession . . . of the property . . . after the expiration of the term for which it is let to him, without the permission of his landlord . . . including a case where . . . the time fixed for such occupancy by the agreement between the parties has expired." 21 GCA § 21103(a).  Under section 21103(b), an "unlawful detainer" also occurs when:

> a tenant of real property . . . continues in possession . . . without the permission of his landlord . . . after default in the payment of rent, pursuant to the lease or agreement under which the property is held, and five (5) days' notice in writing, requiring its payment, stating the amount which is due, or possession of the property, shall have been served upon him . . . .

21 GCA § 21103(b).  Furthermore, 21 GCA § 21108 provides: "In case the unlawful detainer charged is after default in the payment of rent, the complaint must state the amount of such rent." 21 GCA § 21108 (2005).

[32]　When a landlord seeks to evict a tenant through an unlawful detainer action, courts treat it as a summary proceeding.  *See Archbishop*, 1997 Guam 12 ¶ 10 ("Proceedings in an unlawful detainer action are intended to be summary in nature and are required by law to be expedited." (citing 21 GCA § 21120 (2005))); 7 GCA Ch. 32 art. 4 (incorporating unlawful detainer statutes into summary proceedings chapter); 21 GCA § 5104 (2005); *see also* 21 GCA §§ 21103–21104.  "[T]he purpose of an unlawful detainer action is to recover possession." *Archbishop*, 1997 Guam

¶ 10. Furthermore, "because an unlawful detainer action is a summary remedy, the unlawful detainer statute must be complied with strictly." *Id.* (citing *Cal-Am. Income Prop. Fund IV v. Ho*, 207 Cal. Rptr. 532, 533 (Ct. App. 1984)).

### 2. PAG's complaint stated a claim upon which relief could be granted under 21 GCA § 21103(a)

[33]    The trial court was correct in noting that PAG's "Verified Complaint adequately claimed that Defendant was in possession of the property without consent from the property owner in violation of 21 GCA § 21103(a)." RA, tab 16 at 2 (Dec. & Order). The complaint alleged that on December 20, 2024, PAG served GSY with the Notice to Quit, which provided 47 days' notice and "unequivocally terminated, effective as of February 5, 2025, the month-to-month tenancy of Guam Shipyard of Hotel Wharf and all other Port properties occupied by GSY." *See* RA, tab 1 at 3–4, 6 (V. Compl.); *id.*, Ex. C at 1 (Notice to Quit, Dec. 20, 2024). The Notice to Quit, attached as an exhibit, also directed GSY to vacate Hotel Wharf and all other PAG properties. PAG's complaint further asserted that when GSY continued in possession, PAG served the Notice to Vacate on February 6, 2025, demanding immediate surrender of possession under section 21103(a). The complaint further alleged that GSY continued to occupy PAG's property at the time of filing.

[34]    Taken together, PAG's complaint alleged that GSY continued in possession of PAG's property after the expiration of the term for which it was let, without PAG's permission. The complaint also alleged that PAG provided GSY with more than 30 days' written notice to GSY to terminate its month-to-month tenancy of all PAG property. The complaint also alleged that PAG provided GSY with notice of its intent to initiate an unlawful detainer action if GSY remained in possession of the property without permission at least five days before filing the action. Accordingly, PAG adequately stated an unlawful detainer claim upon which relief (i.e., recovery

of possession) could be sought under section 21103(a). The trial court therefore did not err in denying GSY's motion to dismiss PAG's unlawful detainer claim under section 21103(a).

### 3. PAG's complaint did not state a proper claim under section 21103(b), but PAG's inclusion of an improper request for unpaid rent did not invalidate the entire complaint

[35]     While PAG's complaint stated a claim upon which relief could be granted under 21 GCA § 21103(a), GSY argues the complaint nonetheless warranted dismissal for failure to strictly comply with section 21103(b). *See* Appellant's Br. at 7–10. We reject this argument.

[36]     GSY maintains that "[a]lthough PAG's complaint cites 21 GCA § 21103(a), which concerns a holdover tenant, because rent is also sought, § 21103(b), which concerns a tenant's failure to pay rent, is also triggered." Appellant's Reply Br. at 2 (Aug. 8, 2025). GSY cites *Archbishop of Guam v. G.F.G. Corp.*, 1997 Guam 12, to argue that "[t]o be valid, the default notice [under 21103(b)] must be served at least five days prior to the filing of the action, must state the amount of rent which is due, and must be served within one year of the date that the rent became due." Appellant's Br. at 20 (quoting *Archbishop*, 1997 Guam 12 ¶ 11). *Archbishop*, however, is distinguishable. There, this court reversed an unlawful detainer judgment because the landlord's default notice under 21 GCA § 21103(b) demanded sixteen months of rent, exceeding the twelve-month maximum permitted by statute. *See Archbishop*, 1997 Guam 12 ¶¶ 13–15, 17. This court emphasized that strict compliance with section 21103(b) is required in unlawful detainer actions based on nonpayment of rent and that an overstated or excessive rent demand renders a default notice defective, thereby invalidating the landlord's claim for possession. *Id.* ¶¶ 10–15.

[37]     GSY misapplies *Archbishop*. *Archbishop* involved an unlawful detainer action where the landlord's claim for possession was based on nonpayment of rent under section 21103(b), not a holdover or lease-expiration claim under section 21103(a). *See id.* ¶¶ 1–17. *Archbishop* does not hold that *all* unlawful detainer actions must include a statement of rent due. *See id.* Rather, its

rule requiring a default notice to specify the amount of unpaid rent applies only to rent-based unlawful detainer under section 21103(b). *See id.* ¶ 11. It does not extend to actions brought solely under section 21103(a), where the landlord seeks possession following lease expiration or holdover—not payment of rent. *See id.*

[38] None of PAG's Notice to Quit, Notice to Vacate, or its complaint mention 21 GCA § 21103(b). *See* RA, tab 1 at 1–10 (V. Compl.); *id.*, Ex. C at 1 (Notice to Quit); *id.*, Ex. D at 1 (Notice to Quit & Vacate, Feb. 6, 2025). Instead, the Notice to Vacate and complaint reference only section 21103(a). *See* RA, tab 1 at 4, 6–7 (V. Compl.); *id.*, Ex. D at 1 (Notice to Quit & Vacate). PAG's request in its complaint for "monies due and owing [PAG] under the 2017 Lease Agreement, the 2017 Lease Extension, and any holdover tenancy" was pleaded in the alternative, RA, tab 1 at 9 (V. Compl.), and PAG expressly and repeatedly stated that it was withdrawing and abandoning that claim during the motion to dismiss hearing (and at trial), *see* Tr. at 11, 21–24, 39, 95, 99 ("[T]he Port is abandoning, withdrawing, and retracting any alternative plea, or otherwise, for back rent as part of its complaint."); RA, tab 16 at 2 (Dec. & Order); Opp'n Mot. Stay at 5–6.

[39] PAG contends that "even if the unperfected § 21103(b) claim in the Complaint were objectionable," PAG (1) pleaded its request for back rent only in the alternative, (2) never pursued that alternative back-rent claim at trial, (3) expressly and repeatedly withdrew and abandoned it during the hearing and at trial, and (4) elected to seek only surrender of the premises. *See* Appellee's Br. 24–25, 29–31. PAG argues that including an alternative prayer for back rent did not render the entire complaint defective because GRCP 8(e)(2) permits alternative, even inconsistent, pleadings. *See id.* at 24–27. Under GRCP 8(e)(2), "[w]hen two or more statements are made in the alternative and one of them if made independently would be sufficient, the pleading is not made insufficient by the insufficiency of one or more of the alternative statements." Guam R. Civ. P. 8(e)(2). PAG convincingly maintains that "[w]hile the Port could not collect back rent

as part of its action for lack of a § 21103(b) notice, it could certainly still prevail on its § 21103(a) claim due to serving a perfected notice for surrender of premises per § 21103(a)." Appellee's Br. at 22 (citing RA, tab 16 at 2 (Dec. & Order); Tr. at 29).

[40]    Persuasive California case law supports the view that including a request for relief that is unauthorized under 21 GCA § 21103(b) does not invalidate an otherwise proper claim under section 21103(a) in an unlawful detainer complaint. California decisions are generally persuasive in our courts where Guam has adopted a California statute or substantially similar language, absent a compelling reason to depart from California's interpretation. *See Castino*, 2010 Guam 3 ¶ 22. The source of 21 GCA § 21103 is California Civil Procedure Code section 1161. *See* 21 GCA § 21103, SOURCE. Accordingly, California authority interpreting section 1161 is persuasive to the extent that section 21103 and section 1161 remain substantively parallel. *See Archbishop*, 1997 Guam 12 ¶ 10; *see also Zurich Ins. (Guam), Inc. v. Santos*, 2007 Guam 23 ¶ 7.

[41]    PAG cites *Saberi v. Bakhtiari*, 215 Cal. Rptr. 359 (Ct. App. 1985), to argue that an improper request for unpaid rent does not automatically render an entire unlawful detainer complaint defective where the complaint also properly seeks recovery upon holdover under 21 GCA § 21103(a). *See* Appellee's Br. at 20–21. In *Saberi*, the California Court of Appeal considered an unlawful detainer complaint that asserted both (1) a proper request for possession based on a 30-day notice of termination of tenancy and (2) an improper request for pre-termination rent, despite the absence of a separate three-day pay-or-quit notice, as required by California law. *See* 215 Cal. Rptr. at 361–65. The court held that inclusion of the improper rent request did not invalidate the entire complaint or render the summons subject to a motion to quash; instead, it found that the appropriate avenue for objecting to the improper request was moving to strike or raising the issue as a defense in the answer to the complaint. *See id.* at 362–65. Applied here, this supports PAG's position that even if a request in the alternative for rent fails to strictly comply

with 21 GCA § 21103(b)'s notice requirements, it does not invalidate an otherwise proper claim to recover possession upon lease expiration or holdover under section 21103(a).

[42]    GSY contends that *Saberi* is distinguishable because it involved an appeal from a default judgment, not a Rule 12(b)(6) motion to dismiss, and thus has "no application" to its motion. Reply Br. at 3. Because the *Saberi* court considered—and ultimately rejected—the defendant's parallel argument that an unlawful detainer complaint improperly seeking unpaid rent was entirely "invalid and of no effect whatsoever," its reasoning remains persuasive. *See* 215 Cal. Rptr. at 364.

[43]    In determining whether the inclusion of an improper request for rent invalidated the entire complaint, the *Saberi* court considered whether *any* of the relief requested was available in an unlawful detainer proceeding. *See id.* at 364–65. It contrasted *Greene v. Municipal Court*, 124 Cal. Rptr. 139 (Ct. App. 1975), which involved a complaint where "none of the relief requested in the complaint was available in an unlawful detainer proceeding," with the case before it, where a "portion of the complaint which sought possession of the premises based upon the service of a 30-day notice to quit stated a proper claim for recovery." *Saberi*, 215 Cal. Rptr. at 364–65. The *Saberi* court "d[id] not deem that the inclusion of the improper request for pre-termination rent rendered the entire complaint invalid or made the summons subject to a successful motion to quash service." *See id.*

[44]    Similarly, we determine that, because PAG's complaint properly sought recovery of possession under 21 GCA § 21103(a), the inclusion of an improper request for unpaid rent did not invalidate the entire complaint or require dismissal. This interpretation adheres to our precedent and the Guam Rules of Civil Procedure. *See, e.g.*, *Cruz*, 2023 Guam 20 ¶ 10 ("Dismissal for failure to state a claim is appropriate only '*if* it appears beyond doubt that the [non-moving party] *can prove no set of facts* in support of his claim *which would entitle him to relief*.'" (alteration in original) (emphases added) (quoting *Taitano*, 2009 Guam 9 ¶ 6)); Guam R. Civ. P. 8(e)(2) ("When

two or more statements are made in the alternative and one of them if made independently would be sufficient, the pleading is not made insufficient by the insufficiency of one or more of the alternative statements.").

[45]     The *Saberi* court explained that "the appropriate attack on an improper request for relief" is to raise an objection "by a motion to strike the allegations pertaining thereto or as a defense in the answer to the complaint." *See* 215 Cal. Rptr. at 365. Applied here, this indicates that GSY's decision to seek dismissal of the entire complaint based on the inclusion of an allegedly improper rent request was not the appropriate procedural avenue for raising its objection—and that the inclusion alone would not justify dismissal of the entire unlawful detainer action. Taken together, *Saberi*'s reasoning also suggests that when an unlawful detainer complaint includes a proper claim for recovery of possession, the presence of an unauthorized request does not require the case to be removed from an unlawful detainer summary proceeding into an ordinary civil action, contrary to GSY's position.

[46]     Ultimately, the trial court did not err in denying GSY's motion to dismiss because PAG's complaint stated a claim upon which relief could be granted under section 21103(a), and the inclusion of an improper request for unpaid rent did not invalidate the entire complaint or force the case outside of an unlawful detainer summary proceeding.

### 4. Any technical error in allowing PAG to abandon and withdraw its alternative rent request does not warrant reversal

[47]     GSY asserts that the trial court should have dismissed PAG's complaint rather than permitting PAG to withdraw its alternative claim for unpaid rent. Appellant's Br. at 13; Reply Br. at 4–5. GSY argues that PAG was "abusing the summary nature of unlawful detainer proceedings by forcing GSY to defend the action on such short notice and by amending its complaint on the fly." Appellant's Br. at 13 (citing Tr. at 26–27). GSY further contends that by allowing PAG to

withdraw its claim for unpaid rent, the trial court's "considerable leeway provided to PAG contradicts the requirement of strict compliance with the unlawful detainer statutes." *Id.* at 20. GSY maintains that the strict compliance required for unlawful detainer actions prohibits "simply abandoning improper and defective claims" in a summary proceeding, and that dismissal was required. *See id.* at 13–14.

[48]    PAG counters that courts routinely allow parties to abandon alternative claims or elect remedies at or after trial without prejudicing the defendant, and that trial courts should resolve meritorious claims while disregarding abandoned ones. *See* Appellee's Br. at 32–34.  PAG also maintains that its explicit abandonment of the alternative claim constituted a clear election of remedies, fulfilling the doctrine's purpose of preventing double recovery while leaving its section 21103(a) claim for possession intact. *See id.* at 32–34.  PAG references *Teutscher v. Woodson*, 835 F.3d 936, 955 (9th Cir. 2016), and *Latman v. Burdette*, 366 F.3d 774, 782 (9th Cir. 2004), to explain that a party is bound by an election of remedies if: (1) two or more remedies existed, (2) they were "repugnant and inconsistent with each other," and (3) the party affirmatively chose one of them. *See* Appellee's Br. at 32–33.  PAG maintains that it affirmatively chose to pursue only possession, and this voluntary election bars no relief and cures any alleged defect in the complaint. *See id.* at 32–34.

[49]    But Guam law does not prohibit simultaneous recovery of possession and unpaid rent in a single unlawful detainer action, and PAG has not shown that the two remedies here are mutually exclusive or otherwise legally incompatible. *See id.* at 1–56; *see also Lamb v. Hoffman*, 2008 Guam 2 ¶ 35 ("It is not sufficient for a party 'simply to announce a position . . . and then leave it up to this Court to discover and rationalize the basis for his claims, or unravel and elaborate for him his arguments, and then search for authority either to sustain or reject his position.").  Ultimately, the election of remedies doctrine does not apply here.

**[50]**    GSY argues that the trial court's informal handling of PAG's attempt to abandon and withdraw its unpaid rent request failed to strictly comply with the unlawful detainer statutes. *See* Appellant's Br. at 13–14, 20. Although summary proceedings require strict adherence to unambiguous statutory requirements, an appellant must still demonstrate that any deviation resulted in prejudice to warrant reversal under 7 GCA § 15802. Section 15802 directs courts to disregard any pleading or procedural error that does not affect the substantial rights of the parties. *See* 7 GCA § 15802. A judgment or ruling may be reversed only if the record shows the error or defect was prejudicial, caused substantial injury, and affected the outcome; no presumption of prejudice arises from the mere existence of error. *See id.* The appellant bears "the burden to not only affirmatively show error but that the error was sufficiently prejudicial to warrant reversal." *Fenwick v. Watabe Guam, Inc.*, 2009 Guam 1 ¶ 34 (citing *S.D. Hous. Comm'n v. Indus. Indem. Co.*, 80 Cal. Rptr. 2d 393, 404 (Ct. App. 1998)).

**[51]**    Some courts recognize that a "party praying for relief may withdraw the request at any time prior to judgment." *Sweet v. Sweet*, 462 A.2d 1031, 1035 (Conn. 1983); *see also McKee v. Hayward*, 710 So. 2d 362, 369 (La. Ct. App. 1998) ("A party has the right to waive or withdraw a claim."), *writ denied*, 726 So. 2d 407 (La. 1998); *Riverside Cnty. Transp. Comm'n v. S. Cal. Gas Co.*, 268 Cal. Rptr. 3d 196, 209 (Ct. App. 2020), *as modified on denial of reh'g* (Sep. 16, 2020) ("A plaintiff who sets forth alternative remedies in separate counts in his complaint may abandon or dismiss one count without prejudice to his right to proceed on the other." (quoting *Steele v. Litton Indus., Inc.*, 68 Cal. Rptr. 680, 690 (Ct. App. 1968))). At the same time, several jurisdictions have emphasized that "the proper means for a party to abandon some, but not all, of its claims prior to trial is a motion to amend under Federal Rule of Civil Procedure [("FRCP")] 15(a)." *Dynamic CRM Recruiting Sols., L.L.C. v. UMA Educ., Inc.*, 31 F.4th 914, 924 (5th Cir. 2022); *see also Shwachman v. Town of Hopedale*, 540 F. Supp. 3d 134, 139–40 (D. Mass. 2021) ("'A plaintiff

wishing to eliminate particular claims or issues from the action should amend the complaint under Rule 15(a) . . . ." (citation omitted)); *Am. Booksellers Ass'n, Inc. v. Webb*, 590 F. Supp. 677, 684 (N.D. Ga. 1984).

[52]     GRCP 15, modeled after FRCP 15, provides that a party may amend its pleading "once as a matter of course at any time before a responsive pleading is served." Guam R. Civ. P 15(a) & SOURCE. "Otherwise a party may amend the party's pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires." *Id.* Amendments to complaints must comply with formal filing and service requirements. *See* 2 Maine Prac., Maine Civil Practice § 15:2 (3d ed. 2025) (analyzing Me. R. Civ. P. 15(a), which is identical to GRCP 15(a)). GRCP 15 also grants the opposing party time to respond to an amended pleading. *See* Guam R. Civ. P. 15(a).

[53]     Here, PAG retained the right under GRCP 15(a) to amend its complaint once as a matter of course before the filing of a responsive pleading. GSY had filed only a motion to dismiss, which does not constitute a responsive pleading. *See Core Tech Int'l Corp. v. Hanil Eng'g & Constr. Co.*, 2010 Guam 13 ¶ 53 n.6. Nevertheless, PAG never filed an amended complaint nor formally moved to amend its complaint, and it did not make an oral request to amend or invoke GRCP 15. Instead, it repeatedly stated that it had "abandoned" and "withdrawn" its alternative request during the motion to dismiss hearing and at trial. *See* Tr. at 11, 21–24, 39, 95, 99. Such oral statements do not satisfy the formal filing and service requirements of GRCP 5 or Chapter 21 of Title 21 of the GCA.

[54]     Although GRCP 15 also permits amendment by leave of court or by written consent of the adverse party, GSY did not provide written consent to the "amendment," and the trial court never explicitly provided leave to amend the complaint. *See* Tr. at 2–109; RA, tab 16 at 1–5 (Dec. & Order). The trial court did not condone or even comment on the abandonment and withdrawal

during the pretrial hearing or ensuing trial. *See* Tr. at 2–109. Instead, the court only referenced the withdrawal as a settled fact[7] in its written decision and order. *See* RA, tab 16 at 2 (Dec. & Order).

**[55]** Even if the trial court erred in allowing PAG to informally withdraw and abandon its alternative request, the record does not demonstrate that any such error was sufficiently prejudicial to warrant reversal. GSY broadly claims the trial court's "ad hoc" handling of the motion to dismiss "resulted in prejudice to GSY in its ability to defend against the action." *See* Appellant's Br. at 14. GSY further asserted that PAG's ability "to pick and choose which parts of the complaint it wished to assert and to abandon those which were defective to avoid dismissal" left it "unable to adequately defend against what was purported to be just an unlawful detainer" action. *Id.* at 15. To support its claim of prejudice, GSY also quotes *Lynch & Freytag v. Cooper*, 267 Cal. Rptr. 189 (Ct. App. 1990), suggesting that it unfairly had to defend against an "ordinary civil action" while still being subject to the constraints of a summary unlawful detainer proceeding:

> It would obviously be unfair to require the defendant-tenant to defend against ordinary civil actions under the constraints of the summary procedure in unlawful detainer actions. Indeed, the constitutionality of these summary procedures is based on their limitation to the single issue of right to possession and incidental damages. Where, as here, those constraints are removed and the action proceeds as an ordinary civil action for rent there is no prejudice to the defendant.

Appellant's Br. at 15 (quoting *Lynch*, 267 Cal. Rptr. at 192–93). GSY appears to argue that it was

---

[7] In reference to PAG's withdrawal of its alternative request for rent, the trial court stated in its written decision and order:

> Additionally, Defendant argues that Plaintiffs claim for monetary damages in the Verified Complaint requires dismissal because the request for monetary damages forces the issues of this case outside of an unlawful detainer action. In response, *Plaintiff withdrew its claim for monetary damages*. The Court will not make a decision on whether a request for monetary damages could potentially take the matter outside the ability of a Magistrate Judge to return the possession of a property to a plaintiff. The Court does find, in this case, the Plaintiff limited its claim to regain possession of the property and that issue was appropriately before the Court. Plaintiff did appropriately plead a set of facts that would entitle it to relief.

RA, tab 16 at 2 (Dec. & Order, Mar. 11, 2025) (emphasis added). The court also "decline[d] to award any costs, attorneys fees or any monetary damages *based on Plaintiff's removal of those claims*." *Id.* at 4 (emphasis added).

prejudiced because the alleged defects in PAG's complaint effectively transformed this case into an ordinary civil action while leaving GSY limited to summary procedures. *See id.*

[56] However, *Lynch* is distinguishable. There, the plaintiff—not the defendant—sought to convert the unlawful detainer action into an ordinary civil action before trial to recover rent, damages, and attorney fees because *possession had already been delivered* and was no longer in dispute. *See Lynch*, 267 Cal. Rptr. at 191–92. Summary procedures apply in unlawful detainer actions because "[t]he purpose of the unlawful detainer statutes is to provide the landlord with a summary, expeditious way of getting back his property *when a tenant fails to pay the rent* or refuses to vacate the premises at the end of his tenancy." *See id.* at 192. Thus, it would have been unfair in *Lynch* to subject the defendant to the constraints of summary procedure once possession was no longer at issue. *See* Cal. Civ. Prac. Real Property Litigation § 18:1 (Nov. 2025 Update) ("Because the purpose of an unlawful detainer action is to recover possession, there will be no unlawful detainer if the tenant surrenders the premises before the proceeding is commenced, even if surrender is not within the three-day notice period." (citing Witkin, 4 Summary of California L., Real Property § 686 (9th ed.); *Briggs v. Elec. Memories & Magnetics Corp.*, 126 Cal. Rptr. 34 (Ct. App. 1975)). By contrast, here, GSY remained in possession of PAG's property, and PAG's action properly proceeded under the summary unlawful detainer framework to recover possession.

[57] GSY's conclusory assertions that it was prejudiced and the trial court's actions were "improper and unfair," Appellant's Br. at 15, fall short of satisfying its burden under section 15802 to *affirmatively* demonstrate that any error was prejudicial and caused substantial injury; GSY does not explain *how* it was prejudiced or *how* its ability to defend against the action was impaired. *See Lamb*, 2008 Guam 2 ¶ 35; *People v. Rasauo*, 2011 Guam 1 ¶ 36 ("The parties may not merely cite a legal principle without analyzing the relationship between the facts of the case and the law cited.").

[58]　　GSY fails to show that the trial court's alleged error affected the outcome of the case. Even if the court had not permitted PAG to informally abandon and withdraw its alternative rent request, the result would be the same. As discussed, an unlawful detainer complaint seeking both authorized and unauthorized relief is not invalidated by the inclusion of an unauthorized request. Thus, the trial court's decision to allow PAG to informally withdraw its alternative request did not affect the validity of the court's analysis under 21 GCA § 21103(a). In fact, the trial court's decision to allow PAG to withdraw its rent request ultimately benefited GSY, as the court cited this "removal" as a basis for denying PAG any costs, attorney fees, or monetary damages. *See* RA, tab 16 at 4 (Dec. & Order) ("The Court declines to award any costs, attorneys fees or any monetary damages *based on Plaintiff's removal of those claims*." (emphasis added)).

[59]　　Ultimately, the trial court's decision to permit PAG to informally abandon and withdraw its alternative request was not prejudicial, did not cause substantial injury, and did not affect the outcome of the case. Because GSY fails to meet its burden under section 15802 to show prejudicial error, any alleged mistake in allowing the informal withdrawal does not warrant reversal. We affirm the trial court's denial of GSY's motion to dismiss.

## B. The Superior Court Did Not Err by Entering Judgment for PAG on Its Claim for Unlawful Detainer

[60]　　After denying GSY's motion to dismiss, and based on testimony and exhibits admitted at trial, the Superior Court found that GSY received adequate notice to quit and vacate PAG's premises under 21 GCA § 21103(a) but remained in possession after termination of its month-to-month lease, constituting unlawful detainer. RA, tab 16 at 3–5 (Dec. & Order). The court also rejected GSY's argument that alleged prior rent overpayments renewed its month-to-month tenancy under 18 GCA § 51105, thereby preventing unlawful detainer. *See id.* at 1–3.

[61]    GSY contends that the trial court erred in its bench ruling and in entering judgment for PAG on its unlawful detainer claim.  Appellant's Br. at 15–23.  But a judgment warrants reversal due to an error only if the record shows that the error was prejudicial.  *See* 7 GCA § 15802.  This standard requires the appellant to affirmatively demonstrate that the error caused substantial injury and that a different result would have been probable absent the error.  *See id.*; *Fenwick*, 2009 Guam 1 ¶ 34.  GSY has not met this burden.

### 1. The Superior Court did not err in concluding that GSY's alleged rent overpayments did not preclude unlawful detainer

[62]    GSY argues that the trial court "erroneously ruled that PAG successfully proved that GSY was no longer authorized to possess the property after notice was provided" because GSY's alleged "overpayment of rent extended the lease" under 18 GCA § 51105.  Appellant's Br. at 10–13, 20–23.  GSY asserts that although the original Lease stated the rent was $10,710 per month, GSY paid monthly rent of $11,760 from December 2017 until January 2025, resulting in an excess of $1,050 per month for seven years.  *See id.* at 10; Reply Br. at 7; Tr. at 20, 25–27; RA, tab 4 at 1–2 (Ashland Decl., Feb. 18, 2025).  GSY argues that "[b]ecause GSY was overpaying rent, pursuant to 18 GCA § 51105, the lease was automatically extended beyond February 5, 2025."  Appellant's Br. at 10.  According to GSY, these alleged overpayments should have been treated as additional rent sufficient to extend its leasehold interest, or at a minimum created a factual dispute unsuitable for summary unlawful detainer proceedings.  *See id.* at 10–13, 20–23.

### a. The plain language of 18 GCA § 51105 forecloses GSY's argument

[63]    We review issues of statutory interpretation *de novo*.  *Guerrero*, 2010 Guam 11 ¶ 8.  "When interpreting statutes, 'the plain language of a statute must be the starting point.'"  *In re Request of I Mina' Trentai Dos Na Liheslaturan Guåhan*, 2014 Guam 15 ¶ 48 (citing *Amerault v. Intelcom Support Servs., Inc.*, 2004 Guam 23 ¶ 14); *People v. Joshua*, 2015 Guam 32 ¶ 31 ("If a statute is

unambiguous, then the judicial inquiry into the meaning of the statute is complete." (quoting *People v. Lau*, 2007 Guam 4 ¶ 14)).  Title 18 GCA § 51105 provides:

> If a lessee of real property remains in possession thereof after the expiration of the hiring, and the lessor accepts rent from him, the parties are presumed to have renewed the hiring on the same terms and for the same time, *not exceeding one month when the rent is payable monthly*, not in any case one year.

18 GCA § 51105 (2005) (emphasis added).

[64]    The statutory text clarifies that the presumption of renewal is triggered only when a landlord accepts rent *after* the expiration of the hiring.  *See id.*  The statute does not provide that pre-expiration "overpayments"—even if proven—operate as advance payments for future months or extend a tenancy beyond its stated expiration.  *See id.*  And even when a renewal is triggered, the statute expressly caps the renewed term at one month where rent is payable monthly.  *See id.*

[65]    PAG persuasively explains that 18 GCA § 51105 did not extend the Lease because section 51105 "only applies to a situation where a landlord accepts rental payments *after* the expiration of the tenancy, not *before*," and it is undisputed that PAG accepted no rent from GSY after January 2025.  *See* Appellee's Br. at 37; *accord* Tr. at 5–6 (confirming last rent payment that GSY made and PAG accepted was in January).  PAG thus correctly concludes "the statute does not compel a holdover tenancy beyond the date that it expired on February 5, 2025 because the Port no longer accepted rent payments from GSY, nor did GSY pay rent after that date."  Appellee's Br. at 37–38 (citing *People ex rel. Dep't of Transp. v. Lucero*, 170 Cal. Rptr. 554, 556 (Ct. App. 1980)).

[66]    PAG further maintains that: (1) GSY never made, and PAG never accepted, advance payments securing occupancy beyond February 5, 2025; (2) the Lease did not permit such payments and was never amended to allow them; (3) GSY offered no proof of advance payments at trial; and, (4) in any event, GSY paid the increased rent each month for seven years without

protest, thereby impliedly modifying the lease or waiving any right to later claim an extended property interest. *See id.* at 35.

[67]    We agree with PAG and conclude that GSY was not entitled to any extension, even a one-month extension, under the plain language of section 51105.

### b. The trial court did not err in rejecting GSY's overpayment theory

[68]    The trial court properly rejected GSY's argument that alleged prior rent overpayments triggered a renewal of its month-to-month tenancy under 18 GCA § 51105 and precluded unlawful detainer. *See* RA, tab 16 at 3 (Dec. & Order). The court explained that, even if excess rent qualified as prepayment under section 51105, such payment would, at most, extend the tenancy by only one additional month beyond the February 5, 2025, termination date—i.e., until March 5, 2025. *Id.* at 3–4.

[69]    Nevertheless, the court afforded GSY *more time* to vacate than section 51105 permits. The court ordered GSY to vacate Hotel Wharf by March 23, 2025, and Dong Yang by April 1, 2025. RA, tab 9 at 1–3 (Judgment, Feb. 25, 2025); RA, tab 16 at 3 (Dec. & Order). The March 23 deadline reflected PAG's representations at trial that this is the date by which GSY should vacate Hotel Wharf so Black Construction could begin working on the Glass Breakwater Repair Project. *See* Tr. at 25, 30, 105–09. The April 1 deadline was selected to give GSY additional time to use Dong Yang—which is not needed for the Glass Breakwater Repair Project—for staging and moving property, considering GSY's camel fender system project with the Navy. *See id.* at 108. The trial court also selected these dates after GSY's counsel repeatedly requested that—if PAG prevailed on its possession claim—the court give GSY "as much time as possible" to vacate, suggesting that additional time might enable GSY to work out a solution with the Navy. *See id.* at 102–03. The trial court leniently afforded GSY more time to vacate than section 51105 permits, even though the statute did not entitle GSY to even a one-month extension.

### c. California authority cited by GSY does not support its overpayment theory

[70]     GSY argues that it overpaid rent and that there was "insufficient evidence presented to support the court's finding that the rent was properly increased from $10,710 per month to $11,760 per month." *See* Appellant's Br. at 20–22; Reply Br. at 5–8. Even if (1) the rent increase was improper and (2) GSY was entitled to an extension of the expired Lease, the plain language of section 51105 caps such an extension at one month where rent is payable monthly. Rent was payable monthly; thus, the Lease could have been extended no more than one month. The trial court correctly recognized this limit and afforded GSY more than the statutory maximum.

[71]     To sidestep the statutory cap on lease extensions under section 51105, GSY cites California case law to claim that rent overpayment may extend a lease term beyond one month. *See* Appellant's Br. at 11–12; Reply Br. at 9–10. GSY maintains that because "18 GCA § 51105 was adopted, nearly verbatim, from California Civil Code § 1945 . . . California cases interpreting § 1945 [are] persuasive authority unless there is a compelling reason to deviate from that jurisdiction's interpretation." Appellant's Br. at 11–12 (citing *E.C. Dev.*, 2005 Guam 9 ¶ 15). GSY cites *Corson v. Berson*, 25 P. 7 (Cal. 1890) (in bank), to support the notion that tenant rent overpayments can effectively extend a lease by crediting the overpaid amounts toward future occupancy. *See* Appellant's Br. at 12; Reply Br. at 9–10 ("*Corson* is directly applicable here to demonstrate that the overpayment of rent under a lease entitles the tenant to a credit towards future months."). GSY summarizes *Corson* as a case where the California Supreme Court, relying on California Civil Procedure Code section 1945, credited overpaid rent toward three and a half months of occupancy without rent payment, implying a functional extension of the tenancy. *See* Appellant's Br. at 12; Reply Br. at 9–10.

[72]     *Corson* involved crediting overpaid rent as an offset for months without rent payment due to landlord deceit, but it did not create a right to extend a tenancy or compel continued occupancy.

*See Corson*, 25 P. at 7–9. There, tenants leased a store for $300 per month under an agreement that their rent would match a lower amount if the adjoining store rented for less. *Id.* at 7–8. The landlord secretly rented the adjoining store for $200 per month while the tenants continued to pay $300 until they discovered the deception. *Id.* The court credited the $100-per-month overpayments toward three and a half months during which the tenants remained without paying rent, awarding the net overpayment as damages, but it did not order a formal extension of the tenancy or create a right to continued occupancy. *See id.* at 7–9. Thus, *Corson* is distinguishable. There is no compelling reason to contravene the plain language of section 51105 by extending the Lease further.

[73]     Ultimately, the plain language of section 51105 indicates that the maximum extension of the Lease was one month. GSY's claims of rent overpayment and entitlement to an extension are relevant, if at all, only to the question of whether any alleged overpayment triggered a single one-month extension. Broader disputes over the validity of the rent increase are extraneous to the ultimate issue of possession and are outside the proper scope of summary unlawful detainer proceedings. For this appeal, this is particularly true given that the trial court already granted GSY more than the statutory maximum extension under section 51105.

[74]     As the *Saberi* court emphasized, given the summary nature of unlawful detainer proceedings, "extraneous matter is excluded from an unlawful detainer proceeding by 'confining the unlawful detainer action to issues directly relevant to the ultimate question of possession.'" *Saberi*, 215 Cal. Rptr. at 363 (quoting *Green v. Superior Court*, 517 P.2d 1168, 1180 (Cal. 1974) (in bank)). Because PAG's unlawful detainer action is primarily based on a lease-expiration or holdover claim under 21 GCA § 21103(a), the validity of the rent increase is immaterial to the ultimate question of possession and may be properly excluded as extraneous. The trial court therefore did not err in excluding it and limiting the summary proceedings to issues directly

relevant to the ultimate question of possession. Any further challenge to the rent increase or related damages is collateral and must be pursued, if at all, in a separate, ordinary civil action.

**2. We interpret 21 GCA § 21103 as authorizing PAG to pursue unlawful detainer to recover possession of Dong Yang, and find no error in the trial court's entry of judgment in PAG's favor**

[75]    GSY argues that the Superior Court improperly applied unlawful detainer procedures to evict GSY from Dong Yang because its right to occupy that site was under a license agreement tied to a crane demolition project, rather than a leasehold interest. *See* Appellant's Br. at 22–23; Reply Br. at 11–13. It claims that using summary proceedings to terminate a license, especially where the license had not expired by its project-based terms, was erroneous. *See* Appellant's Br. at 22–23; Reply Br. at 11–13.

[76]    A license is personal privilege granted by the landowner (licensor) to another (licensee) to enter or perform acts on the licensor's land, generally revocable at any time without cause or consideration. *See Gutierrez v. Guam Power Auth.*, 2013 Guam 1 ¶ 15; *Richardson v. Franc*, 182 Cal. Rptr. 3d 853, 858 (Ct. App. 2015); *De Haro v. United States*, 72 U.S. 599, 627 (1866); Jon W. Bruce, James W. Ely, Jr., & Edward T. Brading, *The Law of Easements and Licenses in Land* § 11:6 (Mar. 2026 Update); 25 Am. Jur. 2d *Easements and Licenses* § 110 (Feb. 2026 Update). "A license may be revoked by express notice or by conduct on the part of the licensor that is inconsistent with the continuation of the privilege." Bruce, Ely & Brading, *Easements and Licenses in Land* § 11:6; *see also* 25 Am. Jur. 2d *Easements and Licenses* §§ 110–11.

[77]    GSY had a license to occupy Dong Yang to complete its crane demolition project with PAG. *See* RA, tab 1 at 3 (V. Compl.); Appellee's Br. at 7; Tr. at 21, 70–72. Under the License Agreement, GSY's occupancy of Dong Yang was set to expire on May 31, 2024. *See* RA, Admitted Exs. (Unlawful Detainer Hr'g), Def. Ex. 3 at 1–2 (PAG Letter). By its terms, the License Agreement also gave PAG the right to terminate the agreement at PAG's discretion, "with or

without cause, upon thirty days (30) notice." *Id.* at 1–2. At trial, PAG Acting General Manager Muna testified that the crane demolition project "is not complete, but the period of performance has since expired." Tr. at 57, 73.

[78]    On December 20, 2024, PAG served GSY with the Notice to Quit, which provided 47 days' notice and directed GSY to vacate Hotel Wharf and all other occupied areas of PAG property, including Dong Yang, by February 5, 2025. *See* RA, tab 1 at 3–4 (V. Compl.); *id.*, Ex. C at 1 (Notice to Quit); Tr. at 58, 70 (confirming Notice to Quit includes Dong Yang). When GSY did not vacate, PAG served the Notice to Vacate demanding immediate surrender of possession of all PAG property under 21 GCA § 21103(a). *See* RA, tab 1 at 4 (V. Compl.); *id.*, Ex. D at 1 (Notice to Quit & Vacate); Appellee's Br. at 6–7. Contrary to GSY's arguments, its license to occupy Dong Yang was terminated by PAG's Notice to Quit, not by the trial court's actions.

[79]    GSY maintains that "Guam's Unlawful Detainer law does not apply to licenses." Reply Br. at 11–12. GSY suggests that a "license does not fall under unlawful detainer" because it is not expressly mentioned in 21 GCA § 21103(a)–(d). *See id.* at 13. GSY asserts that the license in this case is instead "governed by contract law and not unlawful detainer"; therefore, it argues, the entire case "should have proceeded as an ordinary civil matter." *Id.* (citing *Castaic Studios, LLC v. Wonderland Studios, LLC*, 315 Cal. Rptr. 3d 163, 166–67 (Ct. App. 2023)). We reject these arguments. Still, GSY's position raises a broader question of statutory interpretation—whether Guam's unlawful detainer statutes encompass licensees who remain in possession after their licenses have been lawfully terminated.

[80]    Guam's strict-compliance standard applies when statutory requirements are clear and unambiguous. *See Castino*, 2010 Guam 3 ¶ 29 ("A plain reading construction is appropriate where the statute lays out specific requirements and indicates exactly what is necessary for compliance without ambiguous terms."). However, when a statute is ambiguous, this court may apply a "fair

and reasonable" construction consistent with the statute's underlying public policy and legislative intent. *See id.* ¶¶ 26, 30, 37–40, 58. A statute is ambiguous if its terms are "susceptible to two or more reasonable interpretations." *See People v. Walliby*, 2024 Guam 13 ¶ 10 (quoting *San Agustin v. Superior Court (Nadeau)*, 2024 Guam 2 ¶ 16). To resolve ambiguity, the court may consider the statute's object and policy, *see id.* ¶¶ 10, 18; *People v. Aldan*, 2022 Guam 4 ¶ 47, and may also look to persuasive authority from other jurisdictions interpreting similar provisions, *see People v. Quenga*, 1997 Guam 6 ¶ 8 ("Guidance can be found, however, by examining judicial interpretations of similar statutes in other jurisdictions." (quoting *People v. Kingsbury*, 649 F.2d 740, 742 (9th Cir. 1981))); *Richardson v. Richardson*, 2010 Guam 14 ¶ 12 n.7; *People v. Camacho*, 2015 Guam 37 ¶ 25.

[81]    Section 21103 is ambiguous as to whether licensees are included. On the one hand, the statute defines unlawful detainer using the term "tenant": "A *tenant* of real property, for a term less than life, is guilty of unlawful detainer . . . ." 21 GCA § 21103 (emphasis added). But subsection (a) expressly contemplates relationships that rarely involve a tenancy: "including a case where the person to be removed became the occupant of the premises as a *servant or employee*, and the relation of *master and servant* or *employer and employee* has been lawfully terminated, or the time fixed for such occupancy by the agreement between the parties has expired." *Id.* § 21103(a) (emphases added).

[82]    GSY's position seems to suggest that the statute applies only to the relationships expressly identified in section 21103. *See* Appellant's Br. at 13. While this interpretation is reasonable, the statute's use of the term "including" can also be reasonably read to suggest that section 21103(a) is not exhaustive but illustrative of the types of relationships encompassed within its scope. Although unlawful detainer is generally framed in the context of a tenancy, section 21103(a)'s inclusion of master-servant and employer-employee relationships supports a broader reading that

encompasses other occupants who wrongfully remain in possession—even if they are not technically "tenants." Because section 21103(a) is susceptible to more than one reasonable interpretation, we apply a "fair and reasonable" construction aligned with the statute's underlying public policy and legislative purpose. *See Castino*, 2010 Guam 3 ¶¶ 26, 30, 37–40, 58.

[83]    Considering that the purpose of the unlawful detainer statutes is to give landowners a summary and expeditious means to recover possession of their real property, *see Archbishop*, 1997 Guam 12 ¶ 10; 21 GCA § 21120 (establishing preference for expeditious resolution of summary unlawful detainer actions); *Lynch*, 267 Cal. Rptr. at 192, we conclude that the statute's object and policy are best served by construing section 21103(a) to reach licensees who remain in possession after the lawful termination of their license.

[84]    Persuasive authority from other jurisdictions supports this interpretation.[8] The Supreme Court of Iowa, for example, has held that summary proceedings are available to recover possession from licensees "wrongfully detaining possession," even though the applicable statute does not precisely contemplate licensees. *See Bernet v. Rogers*, 519 N.W.2d 808, 810–12 (Iowa 1994) (analyzing Iowa Code Ann. § 648.1 (1993)); *accord Arns v. Arns*, 671 N.W.2d 531, 531 (Iowa Ct. App. 2003) (unpublished table decision). While Iowa courts have required strict compliance with

---

[8] Title 21 GCA § 21103 is modeled on the 1931 version of California Civil Procedure Code section 1161. *See* 21 GCA § 21103, SOURCE; Cal. Civ. Proc. Code § 1161 Amended Stats. 1931 ch. 738 § 1; Stats. 1933 ch. 513 § 1; Cal. Civ. Proc. Code § 1161 (Deering 1981) (historical note at 136–37). After Guam adopted section 1161, the California legislature amended the statute in 1933 to expressly include licensees (and agents) in the definition of unlawful detainer under subsection (1):

> A tenant of real property, for a term less than life, is guilty of unlawful detainer:
>
> 1.    When he continues in possession . . . of the property . . . after the expiration of the term for which it is let to him, without the permission of his landlord . . . including the case where the person to be removed became the occupant of the premises as a servant, employee, agent, *or licensee* and the relation of master and servant or employer and employee or principal and agent *or licensor and licensee* has been lawfully terminated or the time fixed for such occupancy by the agreement between the parties has expired . . . .

Cal. Civ. Proc. Code § 1161(1), Stats. 1933 ch. 513 § 1 (emphases added). Guam has not enacted a similar amendment. Nevertheless, we conclude that the object and policy of Guam's unlawful detainer statutes are best served by interpreting the ambiguous section 21103(a) to reach licensees whose right to possession has lawfully terminated.

their forcible entry and detainer[9] statutes' notice provisions, *see, e.g.*, *Town of Lakota v. Gray*, 35 N.W.2d 841, 844 (Iowa 1949); *Fritch & Himes v. Reynolds*, 176 N.W. 297, 298–99 (Iowa 1920), they have also held that these statutes may be liberally construed to reach licensees because the statutes' objective is to provide a summary means for landowners to recover possession of real property from persons unlawfully in possession thereof, *see Bernet*, 519 N.W.2d at 810–12 (quoting *Rudolph v. Davis*, 30 N.W.2d 484, 486 (Iowa 1948)); *accord Arns*, 671 N.W.2d at 531; *Petty v. Faith Bible Christian Outreach Ctr., Inc.*, 584 N.W.2d 303, 307 (Iowa 1998); *Steele v. Northup*, 168 N.W.2d 785, 787 (Iowa 1969).

[85]     The Supreme Court of Hawai'i has similarly held that summary unlawful detainer proceedings are available to remove a licensee whose right to possession has terminated, even though the applicable statute only expressly refers to "lessees" and "tenants." *See Kiehm v. Adams*, 126 P.3d 339, 347–48 (Haw. 2005) (analyzing Haw. Rev. Stat. § 666-1 (1993)), *reconsideration denied by*, 128 P.3d 891 (Haw. 2006).

[86]     We adopt a similar approach.  Strict compliance with the unlawful detainer statutes' clear notice requirements remains mandatory, as we stated nearly three decades ago in *Archbishop*. However, we construe 21 GCA § 21103 to reach licensees who remain in possession after the lawful termination of their license.  Applied here, PAG's 47-day written Notice to Quit lawfully terminated GSY's license to occupy Dong Yang.  Title 21 GCA § 21103 authorized PAG to pursue

---

[9] The Iowa courts interpret Iowa Code section 648, which is codified as "forcible entry and detainer" but functionally encompasses unlawful detainer as well; Iowa does not separately codify "unlawful detainer." *See* Iowa Code Ann. § 648 (West); *see also Bernet v. Rogers*, 519 N.W.2d 808, 810–12 (Iowa 1994).  While Guam law distinguishes between "forcible entry," "forcible detainer," and "unlawful detainer" as separate causes of action, *see* 21 GCA §§ 21101–21103, Iowa courts have applied their forcible entry and detainer statutory scheme to address similar scenarios.  They have interpreted section 648.1 to allow summary proceedings against licensees wrongfully detaining possession—even though licensees are not expressly listed in the statute—while simultaneously requiring strict compliance with statutory notice provisions. *See, e.g.*, *Bernet*, 519 N.W.2d at 810–12; *Town of Lakota v. Gray*, 35 N.W.2d 841, 844 (Iowa 1949); *Fritch & Himes v. Reynolds*, 176 N.W. 297, 298–99 (Iowa 1920).  This dual approach—strict adherence to unambiguous procedural requirements combined with a liberal construction of the statute's scope to effectuate its remedial purpose—informs our interpretation of Guam's unlawful detainer statutes.

unlawful detainer to recover possession of that property, and the trial court did not err in entering judgment in PAG's favor.

## C. It Was Harmless Error to Deny GSY the Opportunity to File an Answer After Denying Its Motion to Dismiss

[87]     GSY argues that the Superior Court erred by denying it the opportunity to file an answer after denying its motion to dismiss and by proceeding directly to trial on the unlawful detainer complaint. *See* Appellant's Br. at 16–19; Reply Br. at 10–11. GSY characterizes this as an abuse of discretion.[10] *See* Appellant's Br. at 16–19. But GSY did not object to proceeding directly from the denial to trial on the merits at any point before the Superior Court. *See* Tr. at 28–109.

[88]     Generally, when a party fails to raise an issue before the trial court, we may exercise our discretion to review for plain error. *See E.C. Dev.*, 2005 Guam 9 ¶ 55; *Ramiro*, 2016 Guam 6 ¶ 17; *Lujan*, 2016 Guam 39 ¶ 21. Although we agree that the trial court erred by proceeding directly to trial without first affording GSY an opportunity to answer, reversal is warranted only if GSY affirmatively demonstrates that the error caused substantial injury and that a different result would have been probable absent such error. *See* 7 GCA § 15802; *Fenwick*, 2009 Guam 1 ¶ 34; *E.C. Dev.*, 2005 Guam 9 ¶ 55. GSY has not met this burden.

---

[10] GSY does not persuasively explain why abuse of discretion review should apply. As we have recently stated, "[t]he abuse-of discretion rubric 'is not monolithic.'" *Waathdad v. Cyfred, Ltd.*, 2024 Guam 6 ¶ 11 (per curiam). GSY asserts that the trial court's "decision to address the merits of the unlawful detainer without permitting GSY to file an answer was improper and not in accordance with the unlawful detainer or general pleading requirements and constitutes an abuse of discretion." Appellant's Br. at 17. GSY then cites this court's precedent to explain that "[a]buse of discretion is defined as a trial court decision 'exercised to an end not justified by the evidence, a judgment that is clearly against the logic and effect of the facts as are found.'" *Id.* (quoting *De Vera v. Chen*, 2006 Guam 1 ¶ 10). But GSY does not identify how the trial court's failure to provide an opportunity to answer after denying the motion to dismiss was "not justified by the evidence" or was "clearly against the logic and effect of the facts as are found."

GSY likewise quotes *Shin v. Fujita Kanko Guam, Inc.*, 2009 Guam 21 ¶ 21, for the proposition that "[a]n abuse of discretion occurs where the court does not apply the proper legal standard or its findings of fact are clearly erroneous." *Id.* Yet GSY does not explain which legal standard the trial court supposedly misapplied or which factual findings were clearly erroneous in proceeding directly to trial.

Under either plain error or abuse of discretion review, reversal in a civil case requires the appellant to affirmatively show that the alleged error caused substantial injury and that a different outcome was probable absent the error. *See* 7 GCA § 15802; *Fenwick*, 2009 Guam 1 ¶ 34. GSY has not made that showing.

**[89]** This court has recognized that a failure to object to a procedural error does not necessarily bar appellate review in a civil matter; instead, the absence of an objection relates to whether the party suffered prejudice. *See HRC Guam Co. v. Bayview II L.L.C.*, 2017 Guam 25 ¶ 94 ("failure to object [is] an issue of prejudice, not an issue of waiver" in the context of attorney misconduct); *Adams v. Duenas*, 1998 Guam 15 ¶¶ 17–18. Under plain error review, failing to object in a civil case may weigh against a finding of prejudice. *See HRC Guam*, 2017 Guam 25 ¶ 94; *Adams*, 1998 Guam 15 ¶ 17.

### 1. The Superior Court erred by denying GSY the opportunity to file an answer after denying its motion to dismiss

**[90]** Title 21 GCA § 21117 states that unlawful detainer proceedings follow the general rules of civil practice in Division 2 of Title 7 GCA, unless specifically supplanted by provisions of the unlawful detainer statutes. 21 GCA § 21117 (2005). Similarly, GRCP 1 states that the Guam Rules of Civil Procedure "govern the procedure in all suits of a civil nature, including civil actions . . . [and] *special proceedings*." Guam R. Civ. P. 1 (emphasis added). Unlawful detainer actions are generally governed by the GRCP, to the extent they do not conflict with the specific procedures set forth in Guam's unlawful detainer statutes.

**[91]** In general, a defendant's right to answer a complaint in a civil action arises from GRCP 7(a) and 12(a). *See* Guam R. Civ. P. 7(a), 12(a). GRCP 7(a) identifies the answer as one of the primary pleadings in a civil action, providing that "[t]here shall be a complaint and an answer," which reflects that a defendant's right to file an answer is a fundamental component of the civil litigation process. *See* Guam R. Civ. P. 7(a). This right also appears to extend to unlawful detainer actions. For example, unlawful detainer statute 21 GCA § 21112 states that "[o]n or before the day fixed for his appearance, the defendant may appear and answer or demur." 21 GCA § 21112

(2005). Likewise, 21 GCA § 21109[11] requires that the summons in an unlawful detainer action direct "the defendant to appear *and answer* within five (5) days after the service of the summons upon him," and that "[i]n all other respects, the summons . . . must be issued, served, and returned in the same manner as summons in a civil action." 21 GCA § 21109 (2005) (emphasis added).

[92]    GSY asserts that under Guam's unlawful detainer statutes and general pleading rules, a defendant has the right to file an answer after the denial of a motion to dismiss, and that the trial court's failure to allow such an answer contravened the strict-compliance standards governing summary proceedings. *See* Appellant's Br. at 16–19; Reply Br. at 10–11 (citing 21 GCA § 21109). To support its asserted right to answer, GSY notes that the summons served by PAG expressly required a written answer within five days, and that unlawful detainer statute 21 GCA § 21109 likewise mandates the filing of an answer. Reply Br. at 10. GSY further maintains that its decision to move to dismiss instead of an immediate answer was permissible under the Guam Rules of Civil Procedure, even in unlawful or forcible detainer cases. *Id.* at 10–11. GSY also argues that, once its motion to dismiss was denied, the Superior Court was required under GRCP 12(a)(1) to permit it to file an answer before proceeding to trial. *Id.* at 11.

[93]    PAG counters that GSY had no right to file an answer after failing to do so within the period set by the court's summons. *See* Appellee's Br. at 46–50. The summons directed GSY to file an answer to PAG's complaint within five days after service of the summons, excluding the day of service, and ordered GSY to appear on February 19, 2025, to answer the complaint. RA,

---

[11] Title 21 GCA § 21109 states:

> *The summons must require the defendant to* appear and *answer within five (5) days* after the service of the summons upon him, and must notify him that if he fails to so appear and answer, the plaintiff will apply to the court for the relief demanded in the complaint. In all other respects, the summons, or any alias summons in such proceedings, must be issued, served, and returned *in the same manner as summons in a civil action*.

21 GCA § 21109 (2005) (emphases added).

tab 2 at 1–2 (Summons, Feb. 12, 2025).[12] Rather than file an answer, GSY moved to dismiss on February 18, 2025.

[94] Under GRCP 12(a), service of a motion to dismiss suspends the deadline to answer until the court rules on the motion. Guam R. Civ. P. 12(a)–(b). Thus, GSY remained entitled to file an answer after the motion's denial. The precise time to answer in this posture, however, is an issue of first impression in this court.

[95] In an ordinary civil action, GRCP 12(a) gives a defendant twenty days to answer a complaint, or ten days after denial of a motion to dismiss—a reset rather than resumption of the original deadline. *Id.* In the unlawful detainer context, however, 21 GCA § 21109 supplies a shorter, five-day answer period designed to preserve the summary nature of the proceeding. *See* 21 GCA § 21109. Guam's unlawful detainer statutory scheme does not specify how a pending motion to dismiss affects that five-day deadline.

[96] This gap in the statutory scheme presents a procedural question: whether, in unlawful detainer proceedings, the five-day answer period under section 21109 continues to govern after denial of a motion to dismiss, or whether GRCP 12(a)(1)'s ten-day period applies. Consistent with 21 GCA § 21109's initial five-day answer requirement and the summary nature of unlawful detainer proceedings, we hold that a defendant has five days to answer the complaint following the denial of a motion to dismiss. We further hold that the denial of a motion to dismiss in an unlawful detainer action resets—rather than merely resumes—the defendant's answer period. This interpretation aligns with GRCP 12(a)'s reset structure while preserving the expedited timeline required by section 21109.

---

[12] The parties do not challenge the trial court's treatment of February 19, 2025, as the operative deadline to answer the complaint. We therefore do not address whether that date was properly calculated under 21 GCA § 21109, including whether the statute's five-day period excludes weekends.

**[97]** The trial court therefore erred by proceeding directly to trial without affording GSY the opportunity to answer the complaint.

### 2. GSY failed to show that the Superior Court's error caused substantial injury or made a different outcome probable

**[98]** Although the trial court erred in denying GSY an opportunity to answer after its motion to dismiss was denied, reversal is unwarranted because GSY has not shown that the error caused substantial injury or that a different result would have been probable absent the error. *See* 7 GCA § 15802; *Fenwick*, 2009 Guam 1 ¶ 34; *E.C. Dev.*, 2005 Guam 9 ¶ 55.

**[99]** GSY maintains that the court's immediate transition from denying the motion to dismiss to conducting the bench trial on the unlawful detainer claim deprived it of a meaningful opportunity to prepare a defense, including filing an answer, engaging in discovery, and receiving notice of PAG's trial evidence. *See* Appellant's Br. at 17. GSY characterizes this sequence as a "rushed" and "ad hoc" process that was fundamentally unfair in a highly summary proceeding, where strict compliance is required because such actions deny litigants certain procedural rights available in ordinary civil cases. *See id.* at 18–19.

**[100]** Citing *Archbishop*, 1997 Guam 12 ¶ 10, and 21 GCA § 21120, PAG counters that, because unlawful detainer actions are summary proceedings intended to expedite recovery of possession, the court was not required to allow discovery, a witness list, a briefing schedule, or a late-filed answer. *See* Appellee's Br. at 48–49. PAG convincingly asserts that, although GSY "implies" it would have raised additional defenses if allowed to answer, it has never identified any defense it could not plead. *See* Appellee's Br. at 47 ("[N]ow that months have passed, GSY *still* has never asserted what defense it was deprived from pleading by not being allowed to file an answer."). PAG also persuasively observes that GSY raised no new defense or issue in its motions to stay

proceedings before either the Superior Court or this court, both of which required showing a likelihood of success on the merits. *Id.*

[101] PAG maintains that GSY suffered no prejudice from being denied the opportunity to file an answer after the trial court denied its motion to dismiss in a statutorily limited summary proceeding. *Id.* at 46–50. It persuasively contends that GSY was not hindered in presenting its case, noting that GSY moved to dismiss, re-argued those same issues at trial, presented a witness, cross-examined PAG's sole witness, introduced various exhibits, and was represented by two attorneys who each examined witnesses and argued separately. *Id.* at 48. PAG asserts that "[a]n answer, in form alone, especially when sufficient defenses are raised at trial, and the issues in a written motion to dismiss are also raised and adjudicated, would appear ministerial if not superfluous." *Id.*

[102] While a defendant retains the right to answer after denial of a motion to dismiss in an unlawful detainer action, we assess the Superior Court's error against the statutory preference for expeditious resolution of summary unlawful detainer actions. *See* 21 GCA § 21120 ("[A]ll such actions [for recovering possession of property under Guam's unlawful detainer statutes] shall be *quickly heard and determined*." (emphasis added)); *see also Archbishop*, 1997 Guam 12 ¶ 10 ("Proceedings in an unlawful detainer action are intended to be summary in nature and are *required by law to be expedited*." (emphasis added) (citing 21 GCA § 21120)); *Lynch*, 267 Cal. Rptr. at 192 ("The purpose of the unlawful detainer statutes is to provide the landlord with a *summary, expeditious* way of getting back his property when a tenant fails to pay the rent or refuses to vacate the premises at the end of his tenancy." (emphasis omitted; emphasis added)).

[103] Because GSY failed to object to the Superior Court's procedural error in this civil action, its claim of prejudice is significantly weakened. *See HRC Guam*, 2017 Guam 25 ¶ 94; *Adams*, 1998 Guam 15 ¶ 17. The record reflects that GSY made no objection in the Superior Court to the

court's decision to proceed immediately from denying its motion to dismiss to a trial on the merits. *See* Tr. at 28–109. It remained silent when the court announced the back-to-back proceedings, when the motion to dismiss was denied, and throughout the ensuing trial. *See id.* GSY raises this procedural challenge for the first time on appeal.

[104] Before the hearing on GSY's motion to dismiss, the Superior Court stated, "My game plan is to address the motion today, as well as the underlining [sic] unlawful detainer," to which GSY's co-counsel responded, "Okay." *Id.* at 3. The court reiterated its intent to rule on the motion, take a short recess, and then proceed with the unlawful detainer trial, offering to allow additional time that day or to reconvene if necessary. *See id.* at 28–29. GSY did not object to the court's decision to proceed directly from the denial of its motion to dismiss to trial on the unlawful detainer claim— either at that time or at any point during the proceedings. *See id.* at 28–109. Instead, GSY requested only that the denial of its motion to dismiss be memorialized in writing. *See id.* at 103. After a 30-minute recess following the denial of the motion, the court reconvened, stating, "Seeing that I've denied the motion to dismiss . . . we'll begin with Plaintiff," without objection from GSY. *See id.* at 30–31. At the close of testimony, when the court asked whether to take arguments immediately or reconvene after lunch, GSY's co-counsel replied, "I'm prepared to argue." *Id.* at 93–94. GSY's failure to object to the court's error weighs strongly against a finding of prejudice.

[105] Ultimately, GSY has failed to meet its burden under 7 GCA § 15802 because it has not identified any substantial injury or shown that the outcome would have been different without the trial court's error. Its failure to object in the Superior Court reinforces the lack of prejudice. Reversal is unwarranted.

## V. CONCLUSION

[106] The Superior Court did not err in denying GSY's motion to dismiss because PAG's complaint adequately stated an unlawful detainer claim under 21 GCA § 21103(a) upon which

relief could be granted.  The inclusion—and subsequent withdrawal—of an improper request in the alternative for unpaid rent did not render the entire complaint defective.  We **AFFIRM** the denial of the motion to dismiss.

[107]  Likewise, the Superior Court did not err in entering judgment for PAG on its unlawful detainer claim and ordering GSY to vacate Hotel Wharf and Dong Yang.  GSY's reliance on 18 GCA § 51105 to argue that alleged rent overpayments extended its Lease is misplaced, as the statute caps any renewal at one month—a period the trial court already exceeded to give GSY additional time to vacate.

[108]  Regarding Dong Yang, unlawful detainer proceedings were also properly available despite GSY being a "licensee" rather than a "tenant."  We construe 21 GCA § 21103 to reach licensees who remain in possession after the lawful termination of their license.  But we reiterate that strict compliance with the unlawful detainer statutes' clear notice requirements remains mandatory.

[109]  Finally, although the trial court erred by proceeding directly to trial without affording GSY an opportunity to answer PAG's complaint following the denial of its motion to dismiss, GSY has not shown prejudice under 7 GCA § 15802.  This is underscored by GSY's failure to object in the Superior Court and its failure to affirmatively demonstrate that the error caused substantial injury or affected the outcome.  We **AFFIRM** the judgment awarding PAG possession of Hotel Wharf and Dong Yang.


|  |  |
|---|---|
| /s/ | /s/ |
| F. PHILIP CARBULLIDO | KATHERINE A. MARAMAN |
| Associate Justice | Associate Justice |


/s/
ROBERT J. TORRES
Chief Justice